

FILED
SEP 21 2022
RORY PERRY, CLERK
US District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2022
SEPTEMBER 20, 2022 SESSION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 5:22-cr-00182
26 U.S.C. § 7212(a)
26 U.S.C. § 7202

CHRISTOPHER J. SMYTH

## I N D I C T M E N T

The Grand Jury Charges:

### INTRODUCTION

At all times material to this Indictment:

#### Parties and Entities

1. Defendant CHRISTOPHER J. SMYTH resided in Pineville, Wyoming County, West Virginia, which is within the Southern District of West Virginia.

2. Wyoming County's Best Ambulance Service, Inc. was a business that provided ambulance services and was located in Pineville, Wyoming County, West Virginia, which is within the Southern District of West Virginia. The business operated under the tradename Community Response Ambulance Service for a period of time. Hereinafter, this business will be referred to in this Indictment as "Wyoming County's Best." Wyoming County's Best operated from approximately December 1995 through approximately May 2003.

3. Stat Ambulance Service, Inc. was a business that provided ambulance services and was located in Pineville, Wyoming County, West Virginia, which is within the Southern District of West Virginia. The business was first incorporated using the name Lifeline Ambulance, Inc. and later changed its name to Stat Ambulance Service, Inc. Hereinafter, this business will be referred to in this Indictment as "Stat Ambulance Service." Stat Ambulance Service operated from approximately May 2001 through approximately August 2013.

4. Stat EMS, LLC ("Stat EMS") was a business that provided ambulance services and was located in Pineville, Wyoming County, West Virginia, which is within the Southern District of West Virginia. Stat EMS operated from approximately February 2011 through the date of this Indictment.

5. Defendant CHRISTOPHER J. SMYTH managed and controlled Wyoming County's Best, Stat Ambulance Service, and Stat EMS. These three businesses will be referred to in this Indictment collectively as SMYTH's "ambulance service businesses."

6. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the federal tax laws of the United States.

*Background on Federal Employment Taxes*

7. Pursuant to the Internal Revenue Code and associated statutes and regulations, employers are required to withhold

amounts from their employees' gross pay including Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and federal income taxes. These taxes will be referred to in this Indictment collectively as "trust fund taxes" because employers hold the withheld amounts in trust until paid over to the United States. Employers, with exceptions not applicable here, are required to remit these withheld trust fund amounts to the IRS on a quarterly basis, no later than the last day of the month following the end of the quarter.

8. In addition to the trust fund taxes that must be withheld from employees' pay, employers are separately required to make contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Such employer contributions are likewise required to be remitted to the IRS no later than the last day of the month following the end of the quarter. Collectively, these five components required to be remitted quarterly are commonly referred to as "employment taxes," made up of the trust fund taxes withheld (individual income, Social Security and Medicare taxes) and the matching amounts contributed by the employer (Social Security and Medicare taxes).

9. Employers are typically required to file, one month after the conclusion of the calendar quarter, an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), setting forth

the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits. In some instances, the IRS will direct employers with an expected annual employment tax liability of $1,000 or less to file a Form 944 (Employer's Annual Federal Tax Return), which is filed on an annual basis, in lieu of filing quarterly Forms 941 for the year. Forms 941 and 944 will be referred to in this Indictment collectively as "employment tax returns."

10. A person is responsible for collecting, accounting for, and paying over the employment taxes if he or she has the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact.

11. The Trust Fund Recovery Penalty ("TFRP") is a financial penalty assessed by the IRS against an individual who is responsible for collecting, accounting for, and paying over trust fund taxes for a business and who willfully fails to do so. The TFRP is equal to the full amount of the unpaid trust fund taxes plus interest.

### Wyoming County's Best's History of Non-Compliance with Its Employment Tax Responsibilities

12. From at least September 2002 through at least April 2003 defendant CHRISTOPHER J. SMYTH was the de facto owner of Wyoming County's Best and operated the business. As such, he exercised

4

significant control over its financial affairs and thus was responsible for collecting its trust fund taxes, accounting for its employment taxes, and paying over its employment taxes to the IRS.

13. Defendant CHRISTOPHER J. SMYTH filed, and caused to be filed, Forms 941 for Wyoming County's Best from at least the employment tax quarter ending September 30, 2002, through the quarter ending June 30, 2003. SMYTH withheld, and caused to be withheld, trust fund taxes from the wages of the employees of Wyoming County's Best during these employment tax quarters but failed to fully pay them over to the IRS. He also failed to fully pay the employer's share of employment taxes during these quarters.

14. On or about June 27, 2003, and March 22, 2004, the IRS mailed Wyoming County's Best notices stating that the IRS had filed a lien on its property due to outstanding employment taxes.

15. On or about October 1, 2003, and June 28, 2004, the IRS mailed Wyoming County's Best notices stating that it owed employment taxes and that the IRS would issue levies to collect the unpaid taxes if it did not pay them.

16. On or about October 17, 2005, the IRS assessed the TFRP against defendant CHRISTOPHER J. SMYTH for failing to fully pay Wyoming County's Best's trust fund taxes for the employment tax quarters ending September 30, 2002, through June 30, 2003.

17. On or about December 11, 2007, the IRS mailed defendant CHRISTOPHER J. SMYTH a notice that he owed the TFRP for Wyoming County's Best's unpaid trust fund taxes.

### Stat Ambulance Service's History of Non-Compliance with Its Employment Tax Responsibilities

18. On or about May 4, 2001, defendant CHRISTOPHER J. SMYTH caused the incorporation of Stat Ambulance Service with the West Virginia Secretary of State.

19. From the inception of Stat Ambulance Service to at least August 18, 2004, defendant CHRISTOPHER J. SMYTH caused R.S. to hold themselves out as the president and owner of Stat Ambulance Service, when, in fact, R.S. worked as an emergency medical technician for Stat Ambulance Service.

20. Since its inception, defendant CHRISTOPHER J. SMYTH was the de facto owner of Stat Ambulance Service and operated the business. As such, he exercised significant control over its financial affairs and thus was responsible for collecting its trust fund taxes, accounting for its employment taxes, and paying over its employment taxes to the IRS.

21. Defendant CHRISTOPHER J. SMYTH filed, and caused to be filed, Forms 941 for Stat Ambulance Service from at least the employment tax quarter ending March 31, 2003, through at least the quarter ending June 30, 2012. SMYTH withheld, and caused to be withheld, trust fund taxes from the wages of the employees of Stat

Ambulance Service during these employment tax quarters but failed to fully pay them over to the IRS. He also failed to fully pay the employer's share of employment taxes during these quarters.

22. On or about May 3, 2006, the IRS mailed Stat Ambulance Service a notice stating that it owed employment taxes and that the IRS would issue levies to collect the unpaid taxes if Stat Ambulance Service did not pay them.

23. On or about July 28, 2006, the IRS mailed Stat Ambulance Service a notice stating that the IRS had filed a lien on its property due to outstanding employment taxes.

24. On or about November 26, 2007, the IRS assessed the TFRP against R.S. and defendant CHRISTOPHER J. SMYTH for failing to fully pay Stat Ambulance Service's trust fund taxes. On or about May 3, 2010, the IRS assessed the TFRP against SMYTH for additional employment tax periods for which he failed to fully pay Stat Ambulance Service's trust fund taxes.

25. On or about December 11, 2007, the IRS mailed defendant CHRISTOPHER J. SMYTH a notice that he owed the TFRP for Stat Ambulance Service's unpaid trust fund taxes.

### Stat EMS's History of Non-Compliance with Its Employment Tax Responsibilities

26. On or about January 25, 2007, defendant CHRISTOPHER J. SMYTH caused Stat Ambulance Service to file for bankruptcy.

27. On or about February 28, 2011, defendant CHRISTOPHER J. SMYTH caused the organization of Stat EMS with the West Virginia Secretary of State.

28. Stat EMS operated as substantially the same business as Stat Ambulance Service, including retaining the same employees, clients, and offices.

29. Defendant CHRISTOPHER J. SMYTH caused R.B. to hold themselves out as the president and owner of Stat EMS, when, in fact, R.B. was a family member of Defendant CHRISTOPHER J. SMYTH and had no association with Stat EMS.

30. Since its inception, defendant CHRISTOPHER J. SMYTH was the de facto owner of Stat EMS and operated the business. As such, he exercised significant control over its financial affairs and thus was responsible for collecting trust fund taxes, accounting for its employment taxes, and paying over its employment taxes to the IRS.

31. On or about August 1, 2012, a bankruptcy court approved the sale of Stat Ambulance Service's assets, such as vehicles, to R.B. and Stat EMS.

32. Defendant CHRISTOPHER J. SMYTH caused Forms 944 to be filed for Stat EMS for at least the employment tax years 2012 through 2016. He also caused Forms 941 for Stat EMS to be filed for at least the employment tax quarters ending on March 31, 2017, and June 30, 2017. SMYTH withheld, and caused to be withheld, trust

fund taxes from the wages of the employees of Stat EMS during these employment tax periods but failed to fully pay them over to the IRS. He also failed to fully pay the employer's share of employment taxes during these periods.

33. On or about September 12, 2016, September 19, 2016, October 2, 2017, November 13, 2017, and April 9, 2018, among other dates, the IRS mailed Stat EMS notices stating that it owed employment taxes and that the IRS would issue levies to collect the unpaid taxes if it did not pay them.

34. On or about September 16, 2016, June 9, 2017, November 17, 2017, March 23, 2018, and April 6, 2018, among other dates, the IRS mailed Stat EMS notices stating that the IRS had filed liens on its property due to outstanding employment taxes.

35. On or about July 31, 2017, the IRS assessed the TFRP against defendant CHRISTOPHER J. SMYTH for failing to fully pay Stat EMS's trust fund taxes.

36. While Stat EMS owed unpaid employment taxes to the IRS, defendant CHRISTOPHER J. SMYTH paid, and caused the payment of, personal expenses from Stat EMS's bank accounts, including, but not limited to, approximately $21,035.33 for a 2020 Polaris Ranger in or about May 2020.

37. While Stat EMS owed unpaid employment taxes, defendant CHRISTOPHER J. SMYTH transferred, and caused the transfer of, funds

from Stat EMS to himself, his family members, and other businesses that he controlled.

38. While Stat EMS owed unpaid employment taxes, defendant CHRISTOPHER J. SMYTH paid for, and caused the payment of, personal expenses from business accounts into which he transferred funds from Stat EMS. This includes, but is not limited to, approximately $60,000 for the purchase of real estate for a family member on or about July 22, 2021.

### Defendant CHRISTOPHER J. SMYTH's False and Misleading Statements to IRS Officials

39. On or about August 22, 2015, the IRS initiated collection of defendant CHRISTOPHER J. SMYTH's unpaid TFRP assessments relating to Stat Ambulance Service's unpaid trust fund taxes.

40. A Collection Information Statement for Wage Earners and Self-Employed Individuals, Form 433-A ("Form 433-A"), is used by the IRS to obtain financial information, including current income and assets, from a taxpayer in order to determine the taxpayer's ability to pay an outstanding tax liability. The form requires a taxpayer to sign the document as truthful, correct, and complete under the penalties of perjury.

41. On or about October 9, 2015, defendant CHRISTOPHER J. SMYTH signed a Form 433-A under the penalties of perjury and caused it to be submitted to an IRS revenue officer. The Form 433-A

contained false and misleading statements such as, but not limited to, that he had not held a personal bank account for eight years.

42. Based in part upon the information and omissions reported by defendant CHRISTOPHER J. SMYTH on his Form 433-A, in or about January 2016, the IRS closed the case regarding the collection of SMYTH's outstanding TFRP assessment as uncollectible due to financial hardship.

43. In or about March 2016, the IRS initiated collection of Stat EMS's unpaid employment taxes.

44. On or about March 6, 2017, defendant CHRISTOPHER J. SMYTH signed a Form 433-A under the penalties of perjury and caused to be submitted to an IRS revenue officer. The Form 433-A contained false and misleading statements including, but not limited to, that he did not hold a personal bank account.

45. On or about March 6, 2017, defendant CHRISTOPHER J. SMYTH participated in an interview with an IRS revenue officer during which SMYTH made false and misleading statements including, but not limited to, (1) that he did not hold a personal bank account, (2) that R.B. was the owner of Stat EMS, and (3) that he had no involvement with other businesses besides Stat EMS.

46. A Collection Information Statement for Businesses, Form 433-B ("Form 433-B"), is used by the IRS to obtain financial information, such as current income and assets, from a business in order to determine the business' ability to pay an outstanding tax

liability. The form requires a representative from the business to sign the document as truthful, correct, and complete under the penalties of perjury.

47. On or about March 14, 2017, defendant CHRISTOPHER J. SMYTH signed under the penalties of perjury and caused to be submitted to an IRS revenue officer a Form 433-B for Stat EMS that contained false and misleading statements including, but not limited to, that R.B. was the president of Stat EMS.

48. On or about October 19, 2017, defendant CHRISTOPHER J. SMYTH participated in an interview with an IRS revenue officer during which SMYTH made false and misleading statements, including, but not limited to, that he had minimal to no involvement with certain businesses.

49. On or about May 17, 2018, defendant CHRISTOPHER J. SMYTH participated in an interview with IRS Criminal Investigation Division Special Agents during which SMYTH made false and misleading statements, including, but not limited to, that R.B. was the owner of Stat EMS and that SMYTH had not held a personal bank account in eight years.

## COUNT ONE

50. The Grand Jury realleges and incorporates by reference Paragraphs 1 through 49 of this Indictment as though fully set forth herein.

51. Beginning no later than in or about January 2012, and continuing through the date of this Indictment, in the Southern District of West Virginia and elsewhere, the defendant, CHRISTOPHER J. SMYTH, knowing of and reasonably foreseeing the IRS's efforts to collect his ambulance service businesses' unpaid employment taxes and the corresponding TFRP assessments against him, did corruptly obstruct and impede, and corruptly endeavor to obstruct and impede, the due administration of the internal revenue laws, that is, to collect those outstanding taxes and penalties, by committing and causing to be committed the following acts, among others, each such act having a nexus to the IRS's collection efforts:

   a. Depositing, and causing the deposit of, his paychecks into a bank account titled in the name of another person;

   b. Changing the ambulance service business in name only, that is, ceasing to operate his ambulance service business under the name Stat Ambulance Service and continuing to operate that business under the name Stat EMS;

c. Placing and holding, and causing the placing and holding of, Stat EMS in the name of R.B. as a nominee owner;

d. Transferring, and causing the transfer of, funds from Stat EMS to other bank accounts that he controlled;

e. Paying, and causing the payment of, personal expenses from Stat EMS's business accounts and accounts from other businesses that he controlled;

f. Making false and misleading statements to IRS officials including, but not limited to, that R.B. was the owner of Stat EMS and that he (SMYTH) did not have a personal bank account;

g. Making false and misleading statements on Forms 433-A; and

h. Making false and misleading statements on a Form 433-B.

In violation of Title 26 United States Code, Section 7212(a).

## COUNTS TWO THROUGH FIVE

52. The Grand Jury realleges and incorporates by reference Paragraphs 1 through 49 of this Indictment as though fully set forth herein.

53. Defendant CHRISTOPHER J. SMYTH was a person required to collect, account for on employment tax returns, and pay over to the IRS on behalf of Stat EMS, the trust fund taxes imposed on its employees by the Internal Revenue Code.

54. On or about the dates listed below, in the Southern District of West Virginia and elsewhere, for each of the calendar quarters listed below, defendant CHRISTOPHER J. SMYTH did willfully fail to pay over, and cause the willful failure to pay over, all of the trust fund taxes due and owing to the IRS on behalf of the employees of Stat EMS.

| COUNT | FORM FILED | EMPLOYMENT TAX QUARTER ENDING DATE | TRUST FUND TAX DUE DATE |
|---|---|---|---|
| TWO | 944 | September 30, 2016 | October 31, 2016 |
| THREE | 944 | December 31, 2016 | January 31, 2017 |
| FOUR | 941 | March 31, 2017 | April 30, 2017 |
| FIVE | 941 | June 30, 2017 | July 31, 2017 |

All in violation of Title 26, United States Code, Section 7202.

DAVID A. HUBBERT
Deputy Assistant Attorney General

By: _____
ALEXANDER R. EFFENDI
Trial Attorney for the Tax Division
U.S. Department of Justice


WILLIAM S. THOMPSON
United States Attorney

BY: _____
ERIK GOES
Assistant United States Attorney