IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.                                                  CRIMINAL NO. 5:22-CR-00182

CHRISTOPHER J. SMYTH

## TRIAL BRIEF OF THE UNITED STATES

The United States of America, by and through undersigned counsel, respectfully submits this trial brief to inform the Court of the nature of this case and identify legal issues that may arise at trial.

## I.    STATUS OF THE CASE

On September 21, 2022, the grand jury returned a five-count indictment charging the Defendant with crimes related to his failure to pay the employment taxes withheld from employees' wages at the ambulance business he operated.  Count One alleges that the Defendant corruptly endeavored to obstruct the due administration of the internal revenue code, in violation of 26 U.S.C. § 7212(a), when he misled and lied to an IRS Revenue Officer who was attempting to collect the unpaid taxes.  Counts Two through Five allege that the Defendant failed to properly account for and pay over employment taxes for four quarters, in violation of 26 U.S.C. § 7202.

Trial is set for February 13, 2024.  The Government estimates its case-in-chief will take three days.  The Government expects to call twelve witnesses and offer approximately 200 exhibits into evidence.  The Government will be represented by Assistant Chief David Zisserson and Trial

Attorneys Andrew Ascencio and Kavitha Bondada of the U.S. Department of Justice, Tax Division.  In addition, Assistant United States Attorney Erik Goes will be present in the courtroom.

## II.      FACTUAL BACKGROUND

The Government anticipates that the following evidence will be presented at trial.

### A. The Defendant's Ambulance Business

 The Defendant has owned and operated an ambulance business in Pineville, West Virginia, since at least September 2002 to the present. The ambulance business has primarily operated under the names Wyoming County's Best Ambulance Service, Inc. ("Wyoming County's Best"), Stat Ambulance Service, Inc. ("Stat Ambulance"), and Stat EMS, LLC ("Stat EMS").

In 2007, Stat Ambulance filed for bankruptcy.  On August 1, 2012, the Bankruptcy Court for the Southern District of West Virginia approved the sale of Stat Ambulance's physical assets to a new entity – Stat EMS.  The Defendant, however, had caused the incorporation of Stat EMS three months earlier.  Under the terms of the court's final order approving the sale, the principal of Stat EMS was to be the Defendant's aunt, Rebecca Lovejoy-Buzzo. But, in reality, despite the new business entity, the Defendant maintained exclusive control over the operations and finances of Stat EMS, as he had for all prior iterations of the business.

### B. Employment Taxes, Trust Fund Taxes, and Responsible Persons

The law imposes on an employer a responsibility to truthfully account for and pay over (1) taxes withheld from its employees' wages, and (2) payroll taxes imposed on the employer itself.[1]

---

[1]  *See* 26 U.S.C. § 3101(a) & (b) (imposing upon employees FICA taxes based on wages); 26 U.S.C. § 3102(a) (requiring employer to collect FICA taxes from employee wages at the time of compensation); 26 U.S.C. § 3111(a) & (b) (imposing upon employer excise taxes for social security and hospital insurance on the wages paid to employees); 26 U.S.C. § 3301 (imposing upon employer federal unemployment tax based on wages of employees); 26 U.S.C. § 3402 (requiring employer to withhold income taxes from wages at the time of compensation); 26 U.S.C.

The IRS refers to these two categories together as "employment taxes."  Employment taxes include payments for Social Security and Medicare (half of which come from the employee and half of which come from the employer) as well as federal income tax withholdings from the employee. The IRS refers to the employee portion of employment taxes as "trust fund taxes" because an employer is required to withhold this money from its employees' paychecks in trust before paying it over to the government.

Once the payroll taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual tax liabilities, regardless of whether such taxes are actually paid to the United States. 26 U.S.C. § 31(a); 26 C.F.R. § 1.31-1(a); *Slodov v. United States*, 436 U.S. 238, 242-43 (1978).

Employers are generally required to file a Form 941 reporting these taxes to the IRS on a quarterly basis.  26 C.F.R. § 31.6011(a)-1.  For employers whose employment tax liability is less than $1,000 per year, upon proper request by the employer, the IRS can qualify the employer to file annual Forms 944 in lieu of quarterly forms 941.

A "responsible person" for the purposes of employment taxes is the person or persons with the status, duty, or authority at the employer to assure the withholding and accounting of employment taxes.  A responsible person is one who "has significant, but not necessarily exclusive, authority over corporate finances or management decisions."  *See Erwin v. United States*, 591 F.3d 313, 321 (4th Cir. 2010).  A non-exhaustive list of factors indicating that one is a responsible person are that the person: "(1) served as an officer or director of the company; (2) controlled the

---

§ 6302; 26 C.F.R. § 31.6302-1 (establishing the requirements for employers' deposits of withheld income taxes and FICA taxes).

company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated

in the corporation's day-to-day management; (5) had the ability to hire and fire employees; and (6)

possessed the power to write checks.")

When the IRS determines that a responsible person at an employer has willfully failed to

pay over trust fund taxes, the IRS can assess the trust fund portion of the taxes against that person

individually, so that they are personally liable for paying them.  The IRS does so through a penalty

called the Trust Fund Recovery Penalty ("TFRP").   If the person does not pay the TFRP

voluntarily, the IRS can issue liens and levies on the responsible person's assets.

### C. <u>The Trust Fund Tax Delinquency</u>

For years, the Defendant consistently and repeatedly failed to fully pay over the trust fund

taxes withheld taxes from the employees of his ambulance business.  From the 3rd Quarter of 2002

through the 2nd Quarter of 2003, the Defendant withheld trust fund taxes from the wages of the

employees of Wyoming County's Best but failed to pay them over to the IRS.  Then, from the 1st

Quarter of 2003 though 2nd Quarter of 2012, the Defendant did the same with the employees of

Stat Ambulance.  Finally, from the 4th Quarter of 2012 through the 2nd Quarter of 2017, the

Defendant did the same again regarding the trust fund taxes withheld from the wages of Stat EMS's

employees.

Due to his repeated failure as a responsible person of the ambulance business to pay its

trust fund taxes, the IRS has assessed the Defendant with the TFRP at least thirty times.

### D. <u>The IRS's Collection Efforts</u>

On August 22, 2015, the IRS initiated collections proceedings against the Defendant for

the TFRPs which had been assessed against him as a responsible person for Stat Ambulance.  The

Defendant told the assigned Revenue Officer, Justin Winter, verbally and on an IRS Form 433-A: (1) he was no longer involved as an officer in any business; (2) he had no personal bank account; (3) he had no real property; and (4) he was employed as a manager at Stat EMS.  Based largely on these representations, RO Winter closed the case as uncollectable in January 2016.

The evidence at trial, however, will show that contrary to the Defendant's representations to RO Winter, the Defendant: (1) had effective control over a number of businesses; (2) used a personal bank account in his mother's name; (3) had purchased property in the name of others; and (4) had effective ownership and control of Stat EMS.

In March 2016, after Stat EMS had repeatedly failed to pay its trust fund taxes, the IRS initiated a collection action against the company.  Revenue Officer Justin Winter was again assigned to the case.  In the course of his investigation, RO Winter learned that while Rebecca Lovejoy-Buzzo was the president of the business, she was an officer in name only and had no role in its operations.  Instead, the Defendant was the Director/Manager of Stat EMS, as he had been in the ambulance business's previous iterations.  Indeed, when interviewed, Lovejoy-Buzzo denied having any involvement with the business, its financial policy, payroll, or employment taxes.  She stated that she had been involved with the original Wyoming County's Best ambulance business and that she had agreed to start Stat EMS to get the ambulance business out of bankruptcy.  She stated that she placed Stat EMS in the control of the Defendant.

RO Winter then interviewed the Defendant.  The Defendant confirmed that he was the director of the business, and determined its financial policy and payroll.  The Defendant signed the employment tax returns and knew that taxes were withheld from employees' pay and not paid over to the government.  According to the Defendant, no other individual at Stat EMS had authority

5

over these matters.  The Defendant again told the RO Winter verbally and on an IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals: (1) he was not an officer in any other business; (2) he had no personal bank account; (3) and he had no real property.  Evidence, however, shows otherwise.  Bank account records for Stat EMS showed frequent transfers of funds to other businesses whose finances the Defendant controlled.  In that regard: (1) the Defendant had signature authority over the entities' bank accounts; (2) the individual he claimed owned each business generally did not; and (3) for all of these accounts the persons signing the vast majority of the checks were the Defendant and one of his employees.

**E. Disposition of Proceeds**

From 2012 through 2021, rather than paying Stat EMS's outstanding employment tax liabilities, the Defendant used Stat EMS's bank accounts to pay personal expenses and transfer funds to other businesses he controlled.  In that regard, the Defendant transferred significant funds to JMS Management, LLC, an entity he caused to be created in 2017.  The Defendant also purchased property in his daughter's name using funds from JMS.

**III.   OFFENSES**

**A. Count One – 26 U.S.C. § 7212(a) – Corruptly Endeavoring to Obstruct the IRS**

Under 26 U.S.C. § 7212(a), it is a federal crime to corruptly endeavor to obstruct the due administration of the tax code.  To obtain a conviction, the Government must prove that the Defendant: (1) corruptly, (2) endeavored, and (3) to obstruct or impede the administration of the Internal Revenue Code.  *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). In *United States v. Marinello*, the Supreme Court imposed the further requirements that the Government prove: (1) a targeted administrative IRS action known to the Defendant—or at least reasonably

foreseeable by the Defendant—at the time of the corrupt endeavor, and (2) a "nexus"—defined as a relationship in time, causation, or logic—between the Defendant's corrupt endeavor to obstruct and the pending or foreseeable administrative action. *United States v. Marinello*, 138 S. Ct. 1101, 1109–10 (2018). The Defendant committed this crime when, aware that the IRS was attempting to collect his unpaid TFRPs and Stat EMS's unpaid employment taxes, he lied regarding his assets and his role at Stat EMS.

### B. Counts Two Through Five – 26 U.S.C. § 7202 – Willful Failure to Pay Over Tax

Under 26 U.S.C. § 7202, it is a crime for any person required under the internal revenue code to collect, account for, and pay over a tax to willfully fail to do so. To obtain a conviction, the Government must prove that the Defendant: (1) had a duty to collect, or truthfully account for, or pay over federal income, Medicare, and Social Security taxes, (2) failed to truthfully account for or pay over such taxes, and (3) acted willfully. *United States v. Lord*, 404 F. App'x 773, 775 (4th Cir. 2010).

Willfulness is defined as the voluntary intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 201 (1991). Willfulness does not require the Government to prove that a defendant had the ability to meet his tax obligations. *See United States v. Lord*, 404 F. App'x 773, 779 (4th Cir. 2010) ("[P]aying wages and ... satisfying debts to creditors in lieu of remitting employment taxes to the IRS, constitute circumstantial evidence of a voluntary and deliberate violation of § 7202 . . . willfulness also can be inferred from [a] pattern of failing to pay over the taxes for an extended period of time."); *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) ("The 'intentional preference of other creditors' over the United States is 'sufficient to

establish the element of willfulness' under section 6672(a).") (quoting *United States v. Pomponio*, 635 F.2d 293, 298 n. 5 (4th Cir.1980)).

IV.     **ANTICIPATED LEGAL ISSUES**

    A. <u>**Certified Business and Public Records**</u>

    The vast majority of exhibits the Government intends to introduce in its case-in-chief are domestic business records and certified copies of public records.  These records come from various sources, including the IRS, banks, the State of West Virginia, and local businesses. The Government filed a motion in limine requesting a pre-trial determination on the admissibility of these records on July 31, 2023.  (Doc. 55).

    Certified business records are records of a regularly conducted activity pursuant to Fed. R. Evid. 803(6) and thus are an exception to the rule against hearsay.  Rather than calling multiple custodians of records to testify, the Government plans to introduce the records as self-authenticating under Federal Rule of Evidence 902(11).  The Government has made all of these documents available to the Defendant in discovery and has also provided the accompanying self-authenticating certificates.  Further, the Government gave notice on January 12, 2023, and March 24, 2023, of its intent to introduce these records under Rule 902(11).  (Docs. 31 & 45.)

    Similarly, certified public documents contain records or statements of a public office pursuant to Fed. R. Evid. 803(8) and thus are an exception to the rule against hearsay.  Being certified under seal, the public records (i.e., Bankruptcy Court docket entries) are self-authenticating pursuant to Fed. R. Evid. 902(4), and the domestic public documents (i.e., IRS records) are self-authenticating pursuant to Fed. R. Evid. 902(1).  A certified copy of a public record is admissible to prove its content under Fed. R. Evid. 1005.  The Government made copies

of all of the public records available to the Defendant early in discovery and has also provided the certified versions of the records the Government plans to introduce at trial.  Further, the Government gave notice on January 12, 2023, and March 24, 2023, of its intent to introduce these records pursuant to Federal Rules of Evidence 902(1) & 902(4).  (Docs. 31 & 45.)

**B. <u>Summary Witness's Exclusion from Sequestration</u>**

On November 1, 2022, the Government moved to exclude IRS Revenue Agent Tammy Barker from any sequestration order made by the Court pursuant to Fed. R. Evid. 615 because of her role as a summary witness.  (Doc. 23).  On November 3, 2022, the Court ordered the Defendant to respond to the Government's motion by November 8, 2022.  (Doc. 26).  On November 17, 2022, the Defendant responded that he had no objection to the Government's motion.   (Doc. 28). Accordingly, the Court granted the Government's motion on January 31, 2024.  (Doc. 70).

**C. <u>Fed. R. Evid. 1006 Summary Charts and Fed. R. Evid. 611(a) Visual Aids</u>**

As an aid to the jury, RA Barker and RO Winter will prepare or adopt summary charts to accompany their testimony.  Federal Rule of Evidence 1006 permits the admission of summary charts into evidence as a surrogate for underlying voluminous records so long as the summary is accurate, the underlying records are admissible, and the records were made available to the Defendant at a reasonable time and place before trial. *See, e.g.*, *United States v. Janati*, 374 F.3d 263, 272–73 (4th Cir. 2004).

The Government intends to introduce into evidence charts summarizing:

1)  The bank accounts for which the Defendant had signatory authority

2)  The ambulance businesses' Trust Fund Recovery Penalty history

3)  The ambulance businesses' employment tax liabilities

4) Selected transfers from Stat EMS to other businesses

5) Trust fund taxes due for Counts 2-5

6) Transfers to the Defendant from the ambulance business per its QuickBooks accounting records

7) The Defendant's EMS paychecks deposited into his mother Cathy Smyth's bank account.

The underlying records that were used to create the summaries are admissible as self-authenticating business records pursuant to Federal Rules of Evidence 803(6) and 902(11) and were provided to the defense in the Government's initial discovery production.  On February 10, 2023, the Government filed a supplemental response to the Defendant's motion for a bill of particulars and a notice of intent to introduce summary charts pursuant to Federal Rule of Evidence 1006.  (Doc. 39).  The Government attached to that notice drafts of the Government's summary charts.  (Doc. 39-1).  On July 24, 2023, the Government provided updated drafts to defense counsel.  (Doc. 51). On February 6, 2024, the Government provided final drafts along with the Government's trial exhibit list.  Because the summary exhibits only contain evidence that is admitted or admissible at trial, by necessity they will not be finalized until shortly before RA Barker testifies.  Thus, final copies of the summary exhibits will be provided to the defense at that time.

In the event that these charts are not admitted as substantive summary exhibits under Fed. R. Evid. 1006, the Government intends to use these illustrations as visual aids in order to help explain its case to the jury.  Fed. R. Evid. 611(a) governs the use of visual aids.  Visual aids are typically used as pedagogical devices either to simplify complex evidence or to assist counsel in

10

the presentation of an argument to the jury.  Whereas a Fed. R. Evid. 1006 summary chart "must be an objectively accurate summarization of the underlying documents," a Fed. R. Evid. 611(a) pedagogical device may be less neutral and may reflect the inferences and conclusions of the party offering the summary.  *United States v. Oloyede*, 933 F.3d 302, 311–12 (4th Cir. 2019).

Under Fed. R. Evid. 1006, the Court may order the proponent of any summary charts to produce the underlying voluminous records in Court.  As stated, the Government has already produced the documents to the Defendant.  In addition, the Government intends to have at trial boxes marked for identification containing unredacted copies of the voluminous records.  Any selections or summaries presented in open court will have sensitive PII redacted.

### D. The Government's IRS Witnesses Are Lay Witnesses Under Fed. R. Evid. 701

The Government intends to call two IRS witnesses at trial – neither of whom will testify as to opinions requiring scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.

First, IRS Revenue Officer Justin Winter, who was assigned to collect the Defendant's and his businesses' unpaid employment tax liabilities, will testify about these tax liabilities, his attempts to collect them, and his interactions with the Defendant during the process.  His testimony regarding his collections efforts will be based on his personal recollection and knowledge of IRS policies that control his practices as a Revenue Officer.  RO Winter will also read figures off tax filings and transcripts and summarize certain bank records.  This testimony would not require RO Winter to rely on the type of specialized expertise under Federal Rule of Evidence 702.  *United States v. Lord*, 404 F. App'x 773, 777 (4th Cir. 2010) (holding that an IRS revenue officer's

testimony regarding her collection actions and relevant knowledge of the Internal Revenue Code in an employment tax case did not require Rule 702 expert qualification).

The Government will also call at trial IRS Revenue Agent Tammy Barker, as a summary witness. RA Barker will sit in in court and listen to trial testimony, review exhibits admitted into evidence, and present charts and tables summarizing voluminous bank records and IRS records under Federal Rule of Evidence 1006. After reviewing this evidence, RA Barker will compute the total tax loss listed on the various tax returns and IRS account transcripts, and the total the transfers of funds identified by the Government.

This type of arithmetic does not require the type of specialized expertise controlled by Fed. R. Evid. 702. Revenue Agents are routinely allowed in tax cases to testify as summary witnesses without being certified as experts under Fed. R. Evid. 701. *See, e.g., United States v. Smith*, No. 21-4190, 2022 WL 16948593, at *1 (4th Cir. Nov. 15, 2022); *United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006) (affirming witness's non-expert testimony that "simply added and subtracted numbers from a long catalogue of . . . records, and then compared those numbers in a straightforward fashion.").

As the First Circuit noted, basic tax and accounting calculations and "elementary school arithmetic" are "comfortably within the mine-run of permissible summary witness testimony in tax cases." *United States v. Stierhoff*, 549 F.3d 19, 27-28 (1st Cir. 2008). "The key to admissibility is that the summary witness's testimony does no more than analyze facts already introduced into evidence and spell out the tax consequences that necessarily flow from those facts." *Id.* at 28. Stated otherwise, "[w]hat a summary witness properly can do is read the contents of exhibits and sort through the evidence to show how the documents related to each other and to the charges in

12

the indictment." *United States v. Nicholson*, 961 F.3d 328, 336 (5th Cir. 2020).  That is all RA Barker will be called to do at trial.

### E. Potentially Hostile Witnesses

Proving the Government's case will require testimony from the individuals in the inner circle of the ambulance business the Defendant controlled.  Many of these individuals have a close personal or familial relationship with the Defendant and may therefore be reluctant to testify with complete candor.  Courts have long recognized that "the government must, of course, use the witnesses as it finds them" and have allowed "wide latitude to the government to lead, to cross-examine, and partially to impeach such witnesses."  *United States v. Karnes*, 531 F.2d 214, 217 (4th Cir. 1976).  For that reason, Federal Rule of Evidence 611(c)(2) states that the Court should allow leading questions on direct examination "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

Similarly, it is also permissible for a party to impeach its own witness.  *See* Fed. R. Evid. 607.  Many of the Government's intended witnesses testified before the Grand Jury in this case and that testimony has been produced to the Defendant.  Under Federal Rule of Evidence 801(d)(1)(A), a declarant's prior testimony given under penalty of perjury that is inconsistent with their testimony at trial is excluded from the definition of hearsay and is admissible as substantive evidence to prove the matter asserted.  *United States v. Vance*, 216 F. App'x 360, 361–62 (4th Cir. 2007).  If necessary, under Rule 613, the Government may also impeach witnesses with prior statements not made under oath.

13

**F. <u>Improper Jury Nullification Arguments in Criminal Tax Cases</u>**

A defendant may not invite jury nullification in any form. *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) ("[A] defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power.")  Courts not only are permitted to but, in fact, must restrain such commentary.  *United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971) (finding that the Court's interruption of defense counsel's comments on the government's efforts to jail the Defendant "was not only proper, but was required in the light of the improper remarks of defense counsel.").

In the context of criminal tax trials, circuit courts have upheld district courts' exclusions of defendants' suggestions to the jury that the government could or should have resolved the case civilly rather than in a criminal prosecution as impermissible attempts at jury nullification. *See, e.g.*, *United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (district court properly excluded evidence of civil tax remedy because "it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally"); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (explaining that the availability of civil remedies in a tax case "is irrelevant to the issue of criminal liability" and finding that a jury instruction regarding civil remedies "would serve only to confuse the jury"); *United States v. Burkhart*, 501 F.2d 993, 996 (6th Cir. 1974) ("The matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion."); *United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) (finding "no relevance" in a jury instruction that a civil case might be brought against a defendant who was convicted of evasion under 26 U.S.C. § 7201).

Because of the nature of the obstruction charge, the Government's case-in-chief will inherently include evidence of past IRS civil proceedings against the Defendant.  While the Government at this time is unaware of what defenses will be presented by counsel for the Defendant at trial, the Government respectfully requests the Court limit any improper argument regarding the appropriateness of civil rather than criminal proceedings against the Defendant.

Nor would it be proper for the Defendant to argue that his ambulance business was too important or valuable to the community to risk shutting down if he could not pay its employment taxes.  Conviction under Section 7202 requires proof that the defendant's failure as a responsible officer to pay his business's trust fund taxes was willful.  An intentional decision not to pay trust fund taxes in order to render the funds available for other expenses is itself proof of willfulness.  As the Fourth Circuit has held, "[t]he intentional preference of other creditors over the United States is sufficient to establish the element of willfulness."  *Unites States v. Boccone*, 556 Fed. Appx. 215, 238-39 (4th Cir. 2014) (*quoting Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992).  "Even if other expenditures were necessary for operation of the business, this does not undermine a finding of willfulness."  *Id.* at 239; *see also United States v. Lord,* 404 Fed. Appx. 773, 779 (4th Cir. 2010) ("Such acts, of paying wages and of satisfying debts to creditors in lieu of remitting employment taxes to the IRS, constitute circumstantial evidence of a voluntary and deliberate violation of § 7202.").

That a defendant was motivated to use the taxes withheld from his employees' wages for non-tax expenditures based on his subjective belief of his business's importance does not make his actions any less willful.  Willfulness involves the voluntary and intentional violation of a known legal duty.  *Cheek v. United States*, 498 U.S. 192, 200 (1991).  Proof of and evil motive or bad

purpose is not necessary.  *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Morrison,* 32 Fed. Appx. 669 (4th Cir. 2002).  Any arguments to the contrary would confuse the jury and risk them evaluating the facts based on irrelevant factors.

### G.    Reciprocal Discovery

On October 6, 2022, the Defendant elected to utilize the Standard Discovery Request, set forth in Rule 16.1 of the Local Rules of Criminal Procedure for the Southern District of West Virginia.  (Doc. 10).  On October 20, 2022, the Government provided responsive discovery and has provided supplemental discovery productions as additional materials entered the government's possession.  (Doc. 22).

Under Southern District of West Virginia Local Rule 16.1(b), Defendant is obligated to provide the Government any reciprocal discovery that may be available under Federal Rule of Criminal Procedure 16(b)(1)(A), (B), or (C).  As of this filing, the Government has received no discovery from the Defendant.  The Government therefore respectfully requests that the Court order the Defendant to produce any materials the Defendant intends to introduce in his case-in-chief and notice of any experts the Defendant intends to call at the start of trial to prevent unnecessary delays in proceedings.

### H.    Judicial Notice

The Government will request at trial that the Court take judicial notice that Wyoming County, West Virginia is located within the Southern District of West Virginia.

## V.     CONCLUSION

This brief addresses legal and evidentiary issues that the Government expects may arise at trial. If any issues arise that have not been addressed, the Government requests permission to file supplemental briefing.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney


By:     *s/David Zisserson*
        DAVID ZISSERSON
        Assistant Chief
        ANDREW P. ASCENCIO
        KAVITHA BONDADA
        Trial Attorneys
        U.S. Department of Justice
        Tax Division
        150 M St, NE
        Washington, DC 20002
        Telephone: 202-733-7241
        Fax: 202-514-0961
        E-mail: Andrew.Ascencio@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "TRIAL BRIEF OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 6th day of February, 2023 to:

> Isaac Ralston Forman, Esq.
> Michael B. Hissam, Esq.
> P.O. Box 3983
> Charleston, WV 25339

By:     _s/Andrew P. Ascencio_
        ANDREW P. ASCENCIO
        Trial Attorney
        U.S. Department of Justice
        Tax Division
        150 M St, NE
        Washington, DC 20002
        Telephone: 202-733-7241
        Fax: 202-514-0961
        E-mail: Andrew.Ascencio@usdoj.gov

18