# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:22-cr-00182

CHRISTOPHER SMYTH

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Christopher Smyth's (1) Sentencing Memorandum [ECF 139], filed August 15, 2024, and (2) Supplemental Sentencing Memorandum [ECF 148], filed December 9, 2024. Mr. Smyth objects to the Presentence Investigation Report's ("PSR") failure to recommend a downward departure under U.S.S.G. § 5K2.11.

### I.

On September 21, 2022, a five-count Indictment [ECF 1] was returned against Mr. Smyth. He was charged with two offenses. First, the grand jury alleged the corrupt or forcible interference with administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a) (Count One). Second, he was charged with willful failure to collect or pay trust fund taxes, in violation of 26 U.S.C. § 7202 (Counts Two through Five). On May 2, 2024, a jury convicted Mr. Smyth on Counts One through Three and acquitted him on the remaining charges.

On November 22, 2024, the Court convened for sentencing. The matter was continued pending further briefing on (1) the proper procedure to be followed when a court is confronted with both a departure and variance request, and (2) any case law on a departure for the

applicable Guidelines provision, U.S.S.G. § 5K2.11.

Section 5K2.11 provides that a reduced sentence "may be appropriate" when a defendant commits the crime "to avoid a perceived greater harm." U.S.S.G. § 5K2.11. The Sentencing Commission offers two examples of qualifying conduct: (1) where the defendant commits a crime to avoid a perceived greater harm, and the "circumstances significantly diminish society's interest in punishing the conduct," or (2) where the conduct "may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." *Id.*

Mr. Smyth contends his criminal conduct was motivated by a desire to protect his community by continuing critical emergency services. [ECF 148 at 4]. He claims STAT EMS lacked sufficient funds to pay the trust fund taxes, inasmuch as it earlier absorbed two failed ambulance companies. [*Id.* at 3–4]. He further contends the IRS acknowledged the importance of the services by foregoing levy against STAT EMS or liquidating its assets. [*Id.* at 4]. For these reasons, he seeks the subject departure and a downward variance.

## II.

A. *Proper Procedure for a Departure and Variance Request*

The parties agree § 1B1.1 uses a three-step process for fashioning a sentence under these circumstances. First, the Court evaluates the applicable guideline range. U.S.S.G. § 1B1.1(a). Second, attention is given to any departure request and applicable policy statements. *Id.* § 1B1.1(b). Third, any variance request is measured by the 18 U.S.C. § 3553(a) factors. *Id.* § 1B1.1(c). Our Court of Appeals is in accord. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (finding that, in the wake of *Booker*, a sentencing court must still consult the guidelines, calculate the appropriate range, and consider any relevant factors set forth in the guidelines and §

3553(a)).

B.  *Lesser Harms Departure*

Section 5K2.11 was included in the first Guidelines manual in 1987. It has remained untouched for nearly four decades. It provides as follows:

> **Lesser Harms (Policy Statement)**
>
> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.
>
> In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

U.S.S.G. § 5K2.11.

The Courts of Appeals have not addressed a § 5K2.11 departure for community-centered tax crimes. Indeed, there is limited precedent generally on the subject ground. *See, e.g., United States v. Harris*, 332 F. App'x 55 (4th Cir. 2009) (affirming a § 5K2.11 departure where the defendant possessed ammunition to avoid the greater harm of leaving it where children could be injured); *United States v. Barajas–Nunez*, 91 F.3d 826 (6th Cir. 1996) (finding that a deported alien who re-entered the United States to accompany his pregnant girlfriend during surgery did not warrant a downward departure under § 5K2.11 but also finding that the district court did not commit plain error in concluding otherwise); *United States v. Carvell*, 74 F.3d 8 (1st Cir. 1996)

3

(affirming downward departure under § 5K2.11 where the defendant grew and used marijuana to treat his depression and combat his thoughts of suicide).

Mr. Smyth relies upon *Harris*, where the defendant possessed ammunition to avoid it falling into the hands of children. Our Court of Appeals upheld the departure. It noted the defendant's altruistic motivation *and* the lack of any contemplated use of the firearms found in his home. Mr. Smyth's motive and misconduct, however, are more akin to those of the defendant in *United States v. Wilson*, 220 F. App'x 176 (4th Cir. 2007). In *Wilson*, the defendant's patriotic motives for possessing and manufacturing explosives did not warrant application of § 5K2.11, inasmuch as "his conduct still caused exactly the harm . . . that the statute seeks to prevent." *Wilson*, 220 F. App'x at 179.

The same is true here. Mr. Smyth's decades-long dodge of his taxpayer obligations deprived the Sovereign of monies used to fund essential governmental services. It is our elected representatives who hold the privilege and responsibility for funding decisions. Instead of permitting those policy decisions to be made by the ones to whom the power is reserved, however, Mr. Smyth made his own funding allocation. And he seeks a reduction for doing so. The approach is quite distorted.

Moreover, many district courts have found that a § 5K2.11 departure is "inappropriate where the defendant could have pursued other means of avoiding the greater harm rather than committing a crime." *United States v. Grewal*, 2 F. Supp. 2d 612, 624 (D.N.J. 1998) (citing *United States v. Hunter*, 980 F. Supp. 1439, 1449 (M.D. Ala. 1997); *United States v. Pierce*, No. 96-CR-214, 1997 WL 260454, at *5 (N.D. Ill. May 7, 1997)). *See also United States v. Vanderbrake*, 771 F. Supp. 2d 961, 995 (N.D. Iowa 2011) (citing *United States v. Rooney*, 370 F. Supp. 2d 310, 316 (D. Me. 2005)). The Court agrees.

Mr. Smyth also contends his crimes resulted from insufficient funds after absorbing two failed ambulance services in 2014. [ECF 148 at 3–4]. That is inaccurate. His tax crimes started long prior. [*See* PSR at 5]. The trial surfaced not only Mr. Smyth's failure to pay his trust fund taxes, but also his decision to pay himself, his family, his friends, and the businesses they operated. Mr. Smyth also managed to meet his tax obligations shortly after coming under criminal investigation. Simply put, Mr. Smyth could have paid the trust fund taxes he had already collected from STAT EMS employees. He redirected the funds elsewhere.

In sum, Mr. Smyth shorted the Sovereign and the tax-paying public. Under such circumstances, a downward departure is inappropriate. A ruling on the variance request awaits further development by counsel at sentencing.

### III.

Based on the foregoing discussion, the Court **OVERRULES** Mr. Smyth's objection.

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    January 2, 2025

Frank W. Volk
Chief United States District Judge